**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------x
:
PACIFIC LIFE INSURANCE COMPANY and :
PACIFIC LIFE & ANNUITY COMPANY, :
:
:
:
Plaintiffs, :
:
:
-against- :            Case No. 17-cv-01388-KPF
:
THE BANK OF NEW YORK MELLON, :
:
:
:
Defendant. :
:
:
--------------------------------------------------x

**PACIFIC LIFE INSURANCE COMPANY'S AND PACIFIC LIFE & ANNUITY
COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO
THE BANK OF NEW YORK MELLON'S MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................4

    A.  The At-Issue RMBS ................................................................................................4

    B.  BNYM Breached Its Duties ....................................................................................4

        1.  Breach of Duties Absent an EOD ...............................................................5

        2.  Breach of Duties After EODs .....................................................................5

        3.  Numerous EODs Occurred in the Trusts ....................................................6

    C.  The Global Countrywide Settlement and Article 77 Proceeding Did Not Release, Decide, or Otherwise Address PacLife's Claims against BNYM ................................6

ARGUMENT ...................................................................................................................................8

I.      PACLIFE STATES A CLAIM FOR BREACH OF CONTRACT ...................................9

    A.  PacLife Pleads the Same EODs that this Court Already Found Sufficient in *Wells Fargo*..........................................................................................................................9

    B.  BNYM's Argument that PacLife Must Plead Specific Written Notices of EODs Is Without Merit..........................................................................................................10

        1.  The Complaint Alleges Written Notice ....................................................10

        2.  The Complaint Alleges EODs that Do Not Require Notice and Cure Periods......10

        3.  The Prevention Doctrine Precludes BNYM from Relying on Its Own Failure to Provide Notice ....................................................................................11

        4.  Written Notice to BNYM of an EOD Is Not Required............................15

II.     BNYM CONCEDES THE COMPLAINT ADEQUATELY ALLEGES A NEGLIGENCE CLAIM ..................................................................................................18

III.    PACLIFE'S REMAINING CLAIMS..............................................................................18

IV.    PACLIFE'S CLAIMS ARE TIMELY ............................................................................19

    A.  Claims Based on Conduct Before February 2011 Are Not Time Barred ...................20

i

B.  PacLife's Claims Did Not All Accrue by February 2009 ............................................23

C.  The Article 77 Proceeding Is Not *Res Judicata* as to BNYM's Conduct after October 2010 ............................................................................................................................25

    1.  PacLife's Claims Were Not Decided in the Article 77 Proceeding ......................26

    2.  PacLife's Claims Could Not Have Been Decided in the Article 77 Proceeding ...27

V.   PACLIFE HAS STANDING FOR CLAIMS ON THE SOLD CERTIFICATES ............28

CONCLUSION ..........................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)................................................................................20

*Amies v. Wesnofse*,
    255 N.Y. 156 (1931) .............................................................................14

*Argonaut Partnership L.P. v. Bankers Trustee Co. Ltd.*,
    2001 WL 585519 (S.D.N.Y. May 30, 2001) ........................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8

*Bank of N.Y. v. Tyco Int'l Grp., S.A.*,
    545 F. Supp. 2d 312 (S.D.N.Y. 2008)...................................................12

*In re Bank of New York Mellon*,
    986 N.Y.S.2d 864, 42 Misc.3d 1237(A) (N.Y. Sup. Ct. 2014) .........7, 8, 26, 27

*Bank of N.Y. Mellon v. WMC Mortg., LLC*,
    2017 WL 1946017 (1st Dep't May 11, 2017)..................................... 23-24

*Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.*,
    821 F.3d 297 (2d Cir. 2016)..................................................................11

*In re Bankers Trust Co.*,
    450 F.3d 121 (2d Cir. 2006)............................................................12, 14, 15

*Becker v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    172 F. Supp. 3d 777 (E.D. Pa. 2016) ...................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................8

*Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*,
    180 F. Supp. 3d 246 (S.D.N.Y. 2016)................................................1, 2

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
    2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017) ................................ *passim*

*Blackrock Balanced Capital Portfolio (FI) v. Deutsche Bank Tr. Co.*,
    2016 WL 6208362 (Cal. Sup. Ct. Orange Cnty. Oct. 19, 2016).........13

*Blackrock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
  14-cv-9367 (S.D.N.Y. Feb. 2, 2017)................................................................18

*Blackrock Core Bond Portfolio, et al. v. U.S. Bank Nat'l Ass'n*,
  165 F. Supp. 3d 80 (S.D.N.Y. 2016)................................................................1

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  778 F. Supp. 2d 375 (S.D.N.Y. 2011)...........................................10, 12, 16, 19

*Burgos v. Hopkins*,
  14 F.3d 787 (2d Cir. 1994)................................................................25

*Campbell v. Culver*,
  56 A.D. 591 (4th Dep't 1900)................................................................24

*Cockerell v. Title Ins. & Tr. Co.*,
  42 Cal. 2d 284 (1954)................................................................29

*Commerce Bank v. Bank of N.Y. Mellon*,
  141 A.D.3d 413 (1st Dep't 2006)................................................................18, 27

*Commerzbank AG v. Bank of N.Y. Mellon*,
  2017 WL 1157278 (S.D.N.Y. Mar. 21, 2017)................................1, 2, 9, 18

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
  2017 WL 564089 (S.D.N.Y. Feb. 10, 2017)................................1, 15, 19, 21

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983)................................................................20

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)................................................................21

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987)................................................................21

*Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  2012 WL 4038449 (E.D. Cal. Sept. 10, 2012)................................................29

*Davidson v. Capuano*,
  792 F.2d 275 (2d Cir. 1986)................................................................25, 27, 28

*Elkind v. Chase National Bank of New York*,
  259 A.D. 661 (1st Dep't 1940)................................................................17

iv

*Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*,
   2010 WL 1838730 (S.D.N.Y. May 4, 2010) ...................................................8

*Ferguson v. Hannover Ruckverischerungs-Akteiengesellschaft*,
   2007 WL 2493692 (S.D.N.Y. Aug. 21, 2007) .......................................... 13-14

*Fernandez v. UBS AG*,
   222 F. Supp.3d 358 (S.D.N.Y. 2016)...............................................................16

*First American Title Insurance Co. v. Fiserv Fulfillment Services Inc.*,
   2008 WL 3833831 (S.D.N.Y. Aug. 14, 2008) .................................................24

*Fixed Income Shares: Series M v. Citibank N.A.*,
   130 F. Supp. 3d 842 (S.D.N.Y. 2015).................................................1, 12, 13

*Fixed Income Shares: Series M, et al. v. Citibank, N.A.*,
   No. 653891/15 (N.Y. Sup. Ct. June 27, 2017)................................................15

*Gemmon LLC v. Becker*,
   148 A.D.3d 579 (1st Dep't 2017) ....................................................................15

*Gen. Stencils, Inc. v. Chiappa*,
   18 N.Y.2d 125 (1966) .....................................................................................22

*Gleason v. Spota*,
   194 A.D.2d 764 (2d Dep't 1993) .....................................................................22

*Glus v. Brooklyn E. Dist. Terminal*,
   359 U.S. 231 (1959).........................................................................................21

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016)...............................................................................7

*Great Am. Ins. Co. v. Sequoia Ins. Co.*,
   2016 WL 844819 (C.D. Cal. Mar. 1, 2016) ....................................................29

*Gregory v. Wilkes*,
   205 N.Y.S.2d 405 (N.Y. Sup. Ct. 1960) .........................................................28

*HSN Nordbank AG* v. *RBS Holdings USA Inc.*,
   2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015) .................................................19

*Jamil v. Solar Power Inc.*,
   2016 WL 6820725 (S.D.N.Y. Nov. 8, 2016).....................................................14

*Kamruddin v. Desmond*,
    293 A.D.2d 714 (2d Dep't 2002) .................................................................22

*Kaufman v. Cohen*,
    307 A.D.2d 113 (1st Dep't 2003) ...............................................................22

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005).....................................................................8-9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ..............................................21

*McLearn v. Cowen & Co.*,
    48 N.Y.2d 696 (1979) ...............................................................................25

*Morgan Stanley Mortg. Loan Tr. 13-ARX v. Morgan Stanley Mortg. Capital Holdings LLC*,
    143 A.D.3d 1 (1st Dep't 2016) ..................................................................23

*In re MTBE Prods. Liab. Litig.*,
    2015 WL 5775852 (S.D.N.Y. Oct. 1, 2015) ................................................16

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..................................................................................28

*Nacional Financiera, S.N.C. v. Bankers Trustee Co. Ltd.*,
    2000 WL 36564710 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 13, 2000) .....................14

*Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings*,
    149 A.D.3d 127 (1st Dep't 2017) ...............................................................17

*O'Grady v. BlueCrest Capital Management LLP*,
    111 F. Supp. 3d 494 (S.D.N.Y. 2015).........................................................14

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
    291 F.R.D. 47 (S.D.N.Y. 2013) .........................................................1, 12, 13

*Ortiz v. Cornetta*,
    867 F.2d 146 (2d Cir. 1989)........................................................................9

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007).........................................................................8

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015)........................................ *passim*

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
    172 F. Supp. 3d 700 (S.D.N.Y. 2016)........................................................ *passim*

*Phoenix Light SF Ltd. v. U.S. Bank, Nat'l Ass'n*,
    2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) ..................................................1

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)................................................................20

*Policemen's Annuity & Ben. Fund v. Bank of Am., N.A.*,
    943 F. Supp. 2d 428 (S.D.N.Y. 2013)......................................................1

*Putnam High Yield Trust v. Bank of New York*,
    7 A.D.3d 439 (1st Dep't 2004) ...........................................................17

*In re Reilly*,
    201 N.Y.S.2d 690 (N.Y. Sup. Ct. 1959) ..................................................28

*Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*,
    2014 WL 3858469 (S.D.N.Y. July 30, 2014) ........................................1, 2, 21

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
    2016 WL 899320 (S.D.N.Y. Mar. 2, 2016) ..........................................1, 2, 16

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)............................................. *passim*

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)..................................................1, 13

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*,
    272 F. Supp. 2d 319 (S.D.N.Y. 2003)................................................. 28-29

*Simcuski* v. *Saeli*,
    44 N.Y.2d 442 (1978) ..................................................................22

*Spanos v. Skouras Theatres Corp.*,
    364 F.2d 161 (2d Cir. 1966)..............................................................14

*STS Partners Fund, LP v. Deutsche Bank Secs., Inc*,
    149 A.D.3d 667 (1st Dep't 2017) ........................................................14

*Sunburst Bank v. Exec. Life Ins. Co.*,
    24 Cal.App.4th 1156 (2d Cal. Dis. Ct. App. 1994).........................................29

*Vaughn v. Dame Instruction Co.*,
    223 Cal.App.3d 144 (4th Cal. Dis. Ct. App. 1990)............................................30

*Vincent v. Money Store*,
    915 F. Supp. 2d 553 (S.D.N.Y. 2013)..............................................................20

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)..............................................................21

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
    35 Misc. 3d 1207(A), 2012 WL 1138863 (N.Y. Sup. Ct. Mar. 28, 2012),
    *aff'd*, 96 A.D.3d 684 (1st Dep't 2012)..............................................................24

*W. & S. Life Ins. Co. v. The Bank of N.Y. Mellon*,
    No. A1302490 (Hamilton C.P. June 30, 2016)...................................................3

*Yeiser v. GMAC Mortg. Corp.*,
    535 F. Supp. 2d 413 (S.D.N.Y. 2008)..............................................................25

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (2006)........................................................................................22

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
    84 N.Y.2d 309 (1994)......................................................................................29

## Statutes and Rules

17 C.F.R. 229.1122 ...........................................................................................13

63 N.Y. Jur. 2d Guaranty & Suretyship § 134 (2006) ......................................11

Fed. R. Civ. P. 8 ................................................................................................8

N.Y. G.O.L. § 13-107 .......................................................................................30

## Secondary Sources

1 Witkin, Summary 10th Contracts § 709 (2005)..............................................29

Black's Law Dictionary (10th ed.)......................................................................16

Christopher J. Brady et al., *The Role of the Trustee in Securitization Transactions*, *in*
SECURITIZATION OF FINANCIAL ASSETS 9-1 (Jason H.P. Kravitt ed., 3rd ed. 2016) .......................4

The Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982) ................27

Plaintiffs Pacific Life Insurance Company and Pacific Life & Annuity Company ("PacLife" or "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by Defendant The Bank of New York Mellon ("BNYM" or "Defendant"), along with the Declaration of Ryan A. Kane, dated July 10, 2017 ("Kane Decl.") and accompanying exhibits.

## PRELIMINARY STATEMENT

BNYM concedes that the "Complaint makes the same allegations that have survived dismissal in other cases." Mot. at 1. In total, 10 judges in this District—including this Court—in 15 different decisions have considered substantially similar pleadings and have upheld breach of contract claims, including in a number of actions against BNYM.[1] While BNYM does not move to dismiss pre-Event of Default ("EOD") breach of contract claims (or negligence claims) on the merits, it seeks to dismiss post-EOD breach of contract claims on the merits notwithstanding the well-worn path of precedent rejecting BNYM's arguments—a path that BNYM assured the Court it would not retread. Houpt Decl., Ex. 3 at 33:11-17.

---

[1] *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017) ("*Wells Fargo*"); *Commerzbank AG v. Bank of N.Y. Mellon*, 2017 WL 1157278 (S.D.N.Y. Mar. 21, 2017) ("*Commerzbank v. BNYM*"); *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 564089 (S.D.N.Y. Feb. 10, 2017) ("*Commerzbank v. DB*"); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700 (S.D.N.Y. 2016) ("*Phoenix Light v. DB*"); *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246 (S.D.N.Y. 2016) ("*Blackrock v. BNYM*"); *Phoenix Light SF Ltd. v. U.S. Bank, Nat'l Ass'n*, 2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016); *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon,* 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016) ("*Royal Park v. BNYM*"); *Blackrock Core Bond Portfolio, et al. v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ("*Royal Park v. DB*"); *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon,* 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015) ("*Phoenix Light v. BNYM*"); *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842 (S.D.N.Y. 2015) ("*Fixed Income*"); *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) ("*Royal Park v. HSBC*"); *Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 2014 WL 3858469 (S.D.N.Y. July 30, 2014) ("*Ret. Bd. v. BNYM*"); *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47 (S.D.N.Y. 2013) ("*Oklahoma Police v. U.S. Bank*"); *Policemen's Annuity & Ben. Fund v. Bank of Am., N.A.*, 943 F. Supp. 2d 428 (S.D.N.Y. 2013).

First, BNYM urges the Court to consider *Bankers Trust*—but Wells Fargo raised the same arguments concerning *Bankers Trust* in its motion to dismiss post-EOD breach of contract claims, Kane Decl., Ex. 2 at 4-6, and the Court upheld those claims. *Wells Fargo*, 2017 WL 1194683, at *7-8. Other Courts in this District likewise have rejected the same *Bankers Trust* argument. *See*, *e.g.*, *Phoenix Light v. DB*, 172 F. Supp. 3d at 715 n.5 ("[T]he prevention doctrine would apply to a party who insists on the performance of a condition precedent when the non-performance is caused by the party itself . . . . This approach is consistent with the decision of Court of Appeals in *In re Bankers Tr. Co* . . . .").

Second, BNYM urges this Court to consider the *Commerce Bank* decision with respect to post-EOD claims, even though the Court's decision in *Wells Fargo* contains an entire section titled "*Commerce Bank* Does Not Change This Court's Analysis." *Wells Fargo,* 2017 WL 1194683, at *8-9. This is not a new argument. Wells Fargo unsuccessfully argued that *Commerce Bank* requires dismissal of post-EOD breach of contract claims. Kane Decl., Ex. 1 at 12-15; Ex. 2 at 4-5. Both before and after *Commerce Bank*, courts in this District have rejected BNYM's post-EOD breach of contract arguments concerning the identical Countrywide pooling and servicing agreements. *See Commerzbank v. BNYM*, 2017 WL 1157278, at *5; *Royal Park v. BNYM*, 2016 WL 899320, at *6; *Blackrock v. BNYM*, 180 F. Supp. 3d at 259-60; *Phoenix Light v. BNYM*, 2015 WL 5710645, at *3-5; *Ret. Bd. v. BNYM*, 2014 WL 3858469, at *6. In any event, BNYM's oft-rejected argument that post-EOD claims fail without allegations of written notice ignores PacLife's Complaint, which alleges numerous, specific written notices.

Third, BNYM's *res judicata* argument based on its deal with Bank of America to globally expunge Bank of America's liability for Countrywide RMBS (the "Global Countrywide Settlement") asks the Court to consider material outside the Complaint, and in any event has no

merit. No court to decide a motion to dismiss trustee claims against BNYM has given *res judicata* effect to the Global Countrywide Settlement apart from claims directly challenging the settlement itself. In fact, the same *res judicata* issue was extensively briefed on summary judgment in one case, and the court rejected BNYM's argument. *See W. & S. Life Ins. Co. v. The Bank of N.Y. Mellon*, No. A1302490 (Hamilton C.P. June 30, 2016) (Kane Decl., Ex. 4). No court has dismissed claims on this ground for good reason: (i) the Global Countrywide Settlement released claims against Bank of America, not BNYM; (ii) in seeking court approval of the Global Countrywide Settlement, BNYM represented that it would not rely on the settlement to seek to dismiss certificateholders' claims—*i.e.*, BNYM promised not to do precisely what it seeks to do here; (iii) the court considering the Global Countrywide Settlement rejected a proposed release of claims against BNYM; (iv) the court assessed BNYM's conduct under an entirely different, and lesser, standard than is at issue here; and (v) the court did not consider any claims against BNYM, so the issues in this case were not decided.

Fourth, PacLife's claims are timely. As an initial matter, PacLife's claims as to 10 of the 13 at-issue trusts are tolled, under *American Pipe* tolling, by a prior class action against BNYM in this District. And, irrespective of tolling, PacLife's claims as to all the trusts are timely. PacLife's claims based on servicing breaches and EODs are timely because servicing misconduct and EODs continued through the date of the Complaint. As for claims relating to BNYM's failure to enforce repurchase rights, those claims were not released by BNYM until January 31, 2014—the date the court approved the Global Countrywide Settlement, which was a condition to the settlement. At all times before January 31, 2014, it was possible for BNYM to comply with its contractual obligations to PacLife with respect to the repurchase protocol, and BNYM breached those obligations repeatedly prior to January 31, 2014.

3

<u>Last</u>, BNYM contends, without basis, that New York law governs PacLife's sale of the sold certificates. California law governs the sales. Under California law, to effect the assignment of legal claims, a seller must clearly manifest an intent to assign its existing claims to the buyer. PacLife never manifested any such intent, so it retains its claims as to the sold certificates.

## FACTUAL BACKGROUND

### A.    The At-Issue RMBS

This action arises out of BNYM's role as trustee for 13 residential mortgage-backed securities ("RMBS") trusts (the "Trusts"). Compl. ¶ 1. PacLife acquired RMBS certificates (the "Certificates") issued by the Trusts with a purchase value in excess of $400 million dollars. *Id.* ¶ 3. Plaintiffs are insurance companies with their principal places of business in Newport Beach, California. *Id.* ¶¶ 16-17. PacLife employees operate out of the California office, including with respect to decisions regarding the purchase and sale of securities such as the Certificates. *Id.*

### B.    BNYM Breached Its Duties

BNYM's duties as trustee for the Trusts are set forth in governing agreements, generally known as pooling and servicing agreements ("PSAs"). *Id.* ¶ 9.[2] Contrary to BNYM's claim that it had a "limited role" and had to perform only "ministerial tasks" before an EOD, BNYM has critical duties both before and after an EOD. And BNYM is not an "indenture trustee"; it is a securitization trustee and "[t]he very nature of transaction structures in securitization transactions places a practical burden on the trustee to become more involved and even proactive in many areas of the transactions." Christopher J. Brady et al., *The Role of the Trustee in Securitization Transactions*, *in* SECURITIZATION OF FINANCIAL ASSETS 9-1 (Jason H.P. Kravitt ed., 3rd ed. 2016) at 9-3 (Kane Decl., Ex. 6).

---

[2] References to the PSA herein are to the CWALT 2006-32CB PSA in conformity with the Complaint. The other Trusts were issued pursuant to PSAs with substantially similar language.

### 1. *Breach of Duties Absent an EOD*

BNYM has critical duties to provide breach notices and to effect the repurchase of loans breaching representations and warranties and documentation requirements. Compl. ¶¶ 50-55. BNYM must provide notice of discovered breaches. *Id*. ¶¶ 52, 54. BNYM was assigned "the Depositor's right to require each Seller to cure any breach of a representation and warranty . . . or to repurchase or substitute for any affected Mortgage Loan . . . ." *Id*. ¶ 45. BNYM is required to exercise those rights for the benefit of certificateholders such as PacLife: "The Trustee agrees to . . . exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this Agreement, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected." *Id*. ¶ 46. The Complaint alleges in great detail BNYM's failure to provide notices of discovered breaches and to exercise repurchase rights on behalf of PacLife. *Id*. ¶¶ 76-130. BNYM repeatedly breached its notice and repurchase duties until Countrywide's repurchase obligations were extinguished when a New York court approved the Countrywide Global Settlement in 2014. *Id*. ¶¶ 127-30, 203-04. BNYM downplays these duties but ultimately does not challenge the contract claims that are based on pre-EOD duties.

### 2. *Breach of Duties After EODs*

After an EOD occurs, BNYM must "exercise such of the rights and powers vested in it by [the PSAs], and . . . use the same degree of care and skill in their exercise as a prudent person would exercise under the circumstances in the conduct of such person's own affairs" to protect the rights of certificateholders. *Id*. ¶ 60. BNYM must also notify certificateholders of EODs. *Id*. ¶ 64. BNYM failed to act prudently after EODs throughout its tenure as trustee. *Id*. ¶¶ 131, 201.

BNYM does not claim that it met its prudent person duties; rather, BNYM claims that PacLife has not alleged EODs. That argument fails, as discussed below.

### 3.   *Numerous EODs Occurred in the Trusts*

PacLife alleges multiple EODs in the Trusts. Certain EODs require no notice and have no cure period. For example, the notice and cure period expressly does not apply to breaches of the duties to deliver complete mortgage files and to repurchase loans in lieu of delivery of complete mortgage files. *Id*. ¶ 63. BNYM was aware of the failures to deliver complete mortgage files and to repurchase loans in lieu of delivery for all the Trusts. *Id*. ¶¶ 133-41. Many other EODs were triggered by the master servicer's (i) failures to provide notice and to enforce repurchase of numerous loans that breached representation and warranty provisions (*id.* ¶ 132); (ii) submission of false servicer certifications (*id*. ¶¶ 142-45); (iii) failure to maintain eligible certificate accounts for holding investor funds (*id*. ¶¶ 148-50); and (iv) breach of the applicable servicing standards by, among other things, fabricating loan documents, delaying foreclosures, and overcharging borrowers for default services (*id*. ¶¶ 151-71). BNYM notified the master servicer as to some of these breaches, including the master servicer's failures to cure documentation defects and to repurchase the defective loans (*id*. ¶ 136), placement of investor funds in ineligible certificate accounts (*id*. ¶¶ 149-50), and failure to charge off delinquent loans (*id*. ¶ 168). With respect to other master servicer breaches, BNYM failed to give the master servicer notice, notwithstanding its obligation to do so. *See*, *e.g.*, *id*. ¶¶ 144, 153-55.

### C.   **The Global Countrywide Settlement and Article 77 Proceeding Did Not Release, Decide, or Otherwise Address PacLife's Claims against BNYM**

On June 28, 2011, BNYM initiated a special proceeding under New York CPLR Article 77 seeking judicial approval of the Global Countrywide Settlement (the "Article 77 Proceeding"). *Id*. ¶ 203. Based on analyses conducted by monoline insurers with access to loan

files for Countrywide's defaulted loans, 75-90% of loans violated representation and warranty provisions and should have been repurchased by Countrywide. *Id*. Despite BNYM's clear right to put back defective loans to Countrywide under the PSA's repurchase protocol, BNYM agreed, conditioned on court approval, to release Countrywide and Bank of America for all breaches of representations and warranties for a mere fraction of the damages. *Id*. The settlement became final only when it was approved by the New York state court on January 31, 2014 and the New York appellate court in March 2015. *Id*.

Relying on material outside the Complaint, BNYM argues that the Global Countrywide Settlement and Article 77 Proceeding are *res judicata* as to PacLife's claims here. To the extent that the Court considers material outside the Complaint, BNYM fails to inform the Court of the following salient features of the Global Countrywide Settlement and Article 77 Proceeding.[3]

- The Global Countrywide Settlement did not release any claims against BNYM. Houpt Decl., Ex. 6 at 10-11.

- PacLife was never a party to the Article 77 Proceeding.

- No claims were asserted against BNYM in the Article 77 Proceeding.

- BNYM's assertion that the claims at issue are "precisely the claims covered by the [Countrywide] settlement" is not true. Mot. at 11. The Article 77 court determined only whether BNYM "abused its discretion" when entering into the settlement. *See In re Bank of New York Mellon*, 986 N.Y.S.2d 864, 42 Misc.3d 1237(A), at *10 (N.Y. Sup. Ct. 2014) ("*In re BNYM*"). This, of course, is not the standard governing any of PacLife's claims against BNYM.

- In seeking judicial approval of the Global Countrywide Settlement, BNYM repeatedly represented that it would not seek to dismiss any certificateholders'

---

[3] Contrary to BNYM's assertion, the Complaint does not rely upon the Global Countrywide Settlement. Moreover, where a complaint alleges facts referencing a separate litigation, those references "do[] not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation . . . . A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016).

claims against it on the basis of the settlement. Kane Decl., Ex. 10 at 1274a-1275a;
Ex. 11 at 52:21-24.

- The Article 77 court specifically rejected BNYM's proposed findings that RMBS
  certificateholders (i) were "permanently barred and enjoined" from asserting any
  claim "arising from or in connection with the Trustee's entry into the settlement,"
  and (ii) were barred from asserting any challenge to the settlement or BNYM's
  actions related thereto, except in a direct appeal of the Article 77 Proceeding. *In re
  BNYM*, 42 Misc.3d 1237(A) at *5, 20.[4]

## ARGUMENT

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint need only

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). Moreover, "[a]sking for plausible grounds does not impose a probability

requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence" to prove the claim. *Twombly*, 550 U.S. at 545.

Under this standard, "[o]nly a statement of facts so conclusory that it fails to give notice of the

basic events and circumstances on which a plaintiff relies should be rejected as legally

insufficient under [Rule] 12(b)(6)." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).

"Plaintiffs' obligation to produce evidence at the motion to dismiss stage is even further

reduced in the context of a motion to dismiss premised on the statute of limitations—an

affirmative defense on which the defendant bears the burden of proof." *Ellington Long Term

Fund, Ltd. v. Goldman, Sachs & Co.*, 2010 WL 1838730, at *4 (S.D.N.Y. May 4, 2010). Courts

routinely hold that the fact-intensive inquiries necessary to resolve limitations questions are

inappropriate for resolution at the motion to dismiss stage. *See*, *e.g.*, *Lentell v. Merrill Lynch &

---

[4] BNYM admitted that whether the Article 77 court accepted these proposed findings would determine
the *res judicata* effect of the court's decision. Kane Decl., Ex. 12 at *10 (referring to proposed findings 15
and 16 referred to as p and q in the Article 77 Proceeding decision).

*Co.*, 396 F.3d 161, 168-69 (2d Cir. 2005). A motion to dismiss premised on the statute of limitations cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989). *See also Commerzbank v. BNYM*, 2017 WL 1157278, at \*2.

## I.      PACLIFE STATES A CLAIM FOR BREACH OF CONTRACT

The Motion concedes that the Complaint states a claim for pre-EOD contract breaches. BNYM seeks to dismiss only claims for breach of BNYM's post-EOD duties, on the ground that the Complaint does not adequately allege the existence of EODs. BNYM's arguments have been repeatedly rejected by courts in this District, including by this Court in *Wells Fargo*. The same result is warranted here.

### A.      PacLife Pleads the Same EODs that this Court Already Found Sufficient in *Wells Fargo*

This Court held in *Wells Fargo* that "plaintiffs satisfy their [pleading] burden where their allegations raise a reasonable expectation that discovery will reveal evidence proving their claim." *Wells Fargo*, 2017 WL 1194683, at \*7. With respect to the requirements for pleading EODs, this Court held:

> Additionally, Plaintiffs allege that EODs occurred when Servicers failed to (i) act in accordance with the normal and usual standards of practice of *prudent* mortgage servicers; (ii) ensure the loans were serviced legally; and (iii) promptly notify [Defendant] and other parties upon discovery [of Sellers'] R&W breaches. These allegations also support Plaintiffs' claims that Defendant breached its post-EOD contractual duty to act as would a prudent person by failing to (i) notify Servicers of the R&W breaches of which it was aware; (ii) require those Servicers to cure those breaches, or to repurchase defective loans; (iii) notify Certificateholders of any uncured EODs; and (iv) reimburse the Trusts for damages.

*Id*. at \*8 (emphasis in original, internal quotations and citations omitted). PacLife alleges in great detail the same facts that this Court already ruled adequately allege EODs. *See supra* p. 6. Nothing more is required at this stage.

**B.     BNYM's Argument that PacLife Must Plead Specific Written Notices of EODs Is Without Merit**

**1.   The Complaint Alleges Written Notice**

Contrary to *Wells Fargo*, BNYM argues that PacLife must plead that the master servicer received specific written notices of breaches. Mot. at 17-23. Although not required, PacLife *does* plead that BNYM itself sent the master servicer written notice of breaches. For example, BNYM provided notices to the master servicer regarding its failures to cure or repurchase loans with documentation defects. *See* Compl. ¶ 136. BNYM further provided notice to the master servicer of its failure to write down 180-day delinquent loans to zero as required by § 4.06(a) of the PSAs. *Id.* ¶ 168. Additionally, BNYM informed the master servicer of its failure to hold investor funds in eligible accounts as required under the PSA. *Id.* ¶ 150.

**2.   The Complaint Alleges EODs that Do Not Require Notice and Cure Periods**

BNYM's position is also unfounded because PacLife pleads the occurrence of EODs that do not require a notice and cure period under the PSA. BNYM was responsible for reviewing mortgage loan files and sending exception reports indicating documentation defects to the master servicer and other parties to the PSA. Compl. ¶¶ 33-49.[5] As set forth in PSA Section 7.01(ii), the failures to cure the noticed exceptions or to repurchase the defective loans in lieu of cure

---

[5] Because the PSA does not specify a particular form that notice of a breach must take, no formal written notice is required. *Phoenix Light v. DB*, 172 F. Supp. 3d at 716 ("[F]ormal written notices are not required unless the indenture explicitly sets out the format of the notice."); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 399 (S.D.N.Y. 2011).

constitute automatic EODs without any further notice and cure period:

> [A]ny failure by the Master Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement . . . which failure materially affects the rights of Certificateholders, that failure continues unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates; **_provided, however, that the sixty-day cure period shall not apply to the initial delivery of the Mortgage File for Delay Delivery Mortgage Loans nor the failure to substitute or repurchase in lieu of delivery_**[.]

Compl. ¶ 61 (emphasis added). These EODs continued uncured. *Id*. ¶¶ 134-41.[6]

### 3.   The Prevention Doctrine Precludes BNYM from Relying on Its Own Failure to Provide Notice

BNYM's argument that PacLife must plead notice of EODs is further misplaced as courts in this District uniformly hold that a trustee cannot argue that EODs did not occur because the trustee failed to provide notices to the master servicer. For example, BNYM made the same argument in *Phoenix Light v. BNYM*, and the Hon. Valerie E. Caproni flatly rejected it: "To the

---

[6] Even with respect to the EODs in § 7.01(ii) that provide the master servicer a 60-day notice and cure period, that period is not a condition precedent to an EOD under *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.*, 821 F.3d 297 (2d Cir. 2016) ("*BNYM v. MS*"). There, the RMBS trustee brought suit against the loan seller alleging that one of the loans breached the seller's representations and warranties. *Id*. at 301-02. The seller claimed that the servicer had not promptly requested cure of the breach as allegedly required by the contract documents. *Id*. at 303. The Second Circuit held that the "notice of breach" and "request for cure" language were not "cast in the express language of condition" and thus "perform[ed] no triggering role." *Id*. at 300. Instead, the notice and opportunity to cure were mere "promises" that were to be reviewed for "substantial performance." *Id*. Similarly here, the notice and cure provisions in PSA § 7.01 are not unmistakably cast as conditions precedent, nor do they employ any of the recognized "linguistic conventions" cited in *BNYM v. MS*. Here, the PSAs' notice and cure provision is for the benefit of the servicer—not the trustee. The provision allows the servicer the opportunity to cure or remedy the default so that the servicer is able to prevent its termination under the contract. *See* Compl. ¶¶ 60-61, 64, 67, 70; *see also BNYM v. MS*, 821 F.3d at 312 (quoting 63 N.Y. Jur. 2d Guaranty & Suretyship § 134 (2006)). Thus, there is no basis for *BNYM* to rely upon *servicer* protections as a condition that must be satisfied to trigger *BNYM's* obligation to act.

extent that BNYM argues that its failure to remit the required notice of such defects shields it from liability, the Court is unpersuaded." 2015 WL 5710645, at *5; *see also BNP Paribas*, 778 F. Supp. 2d at 398 ("[A]s in [*Bankers Trust*], [trustee] may not insist on a written notice requirement where its own breaches caused the failure of this requirement to be met."); *Oklahoma Police v. U.S. Bank*, 291 F.R.D. at 70-71 ("However, the trustee cannot rely on its own failure to give notice to escape its own liability.") (citing *In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006)); *Phoenix Light v. DB*, 172 F. Supp. 3d at 715; *Royal Park v. DB*, 2016 WL 439020, at *5; *Fixed Income*, 130 F. Supp. 3d at 855. Indeed, Wells Fargo unsuccessfully raised the very same argument to this Court. Kane Decl., Ex. 2 at 5-6.

There is nothing remarkable about courts in this District applying the prevention doctrine in this context. Mot. at 18. This is the textbook case for the prevention doctrine. As the Hon. Jesse M. Furman stated in applying the prevention doctrine in an RMBS trustee case, an RMBS trustee "is not permitted to take advantage of its own wrong." *Fixed Income*, 130 F. Supp. 3d at 855 (quoting *Bankers Trust*, 450 F.3d at 129). Indeed, "it has been established for over a century that a party may not insist upon performance of a condition precedent when its non-performance has been caused by the party [i]tself." *Bank of N.Y. v. Tyco Int'l Grp., S.A.*, 545 F. Supp. 2d 312, 324 n.81 (S.D.N.Y. 2008) (citation and internal quotations omitted). There is no basis to upend a century of precedent in this case.

Undeterred by the uniform decisions in this District following a century of precedent, BNYM, like Wells Fargo, argues that *Bankers Trust* requires a different result. However, *Bankers Trust* has not "escaped the attention of district courts considering the doctrine in cases brought against RMBS trustees." Mot. at 1. Courts in this District cite and rely upon *Bankers Trust* in applying the prevention doctrine in RMBS trustee cases. *See*, *e.g.*, *Phoenix Light v. DB*,

172 F. Supp. 3d at 715 n.5; *Fixed Income*, 130 F. Supp. 3d at 855; *Oklahoma Police v. U.S. Bank*, 291 F.R.D. at 70.

Nevertheless, BNYM argues that *Bankers Trust* militates against application of the prevention doctrine because it should apply only when a defendant has an express duty to effectuate a condition precedent or actively hinders one. Mot. at 17-20. BNYM's argument fails. First, when a trustee has knowledge of breaches, numerous courts hold that it has a duty to give written notice to the master servicer under PSAs substantially similar to those here. *See Phoenix Light v. DB*, 172 F. Supp. 3d at 715 n.5 (rejecting the trustee's argument that it had no affirmative duty to notify servicers); *Blackrock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 6208362, at *5 (Cal. Sup. Ct. Orange Cnty. Oct. 19, 2016) ("*shall have been given to the Master Servicer . . . reflects a duty to give such notice*"); *Royal Park v. DB*, 2016 WL 439020, at *5. Section 7.01 of the PSA provides that BNYM "shall" give notice of master servicer breaches, and the use of the word "'shall' clearly imports a mandatory obligation that the Indenture Trustee exercise its discretion." *Becker v. Bank of N.Y. Mellon Tr. Co., N.A.*, 172 F. Supp. 3d 777, 794 (E.D. Pa. 2016).[7]

Second, contrary to BNYM's contention, the prevention doctrine applies whether or not there is an express contractual duty to give notice.  This is the holding of numerous cases in this District. *See Fixed Income*, 130 F. Supp. 3d at 855; *Royal Park v. HSBC*, 109 F. Supp. 3d at 605; *Royal Park v. DB*, 2016 WL 439020, at *7-8; *Phoenix Light v. DB*, 172 F. Supp. 3d at 715 n.5.[8]

---

[7] In addition, multiple other contractual and statutory provisions require BNYM to give notice of master servicer breaches. For example, Regulation AB expressly requires BNYM as trustee to disclose on Form 10-K if "[c]ollateral or security on pool assets" are not "maintained as required by the transaction agreements or related pool asset documents." 17 C.F.R. 229.1122. For the Trusts issued in 2006 and later, BNYM also was contractually required to file reports on Form 10-D, on which "[m]aterial breaches of pool asset representations or warranties or transaction covenants" must be reported. *See* Compl. ¶ 62.

[8] BNYM asks the Court to ignore the uniform decisions in this District applying the prevention doctrine to the same contractual provision at issue here and instead apply inapposite cases. *Ferguson v. Hannover*

Third, BNYM's argument that only "active hindrance" of the occurrence of a condition precedent can trigger the prevention doctrine is without merit. Mot. at 18. The sole case BNYM relies on, *Bankers Trust*, does not support its position. In *Bankers Trust*, the Second Circuit reviewed and distinguished *Amies v. Wesnofse*, 255 N.Y. 156 (1931) that required "active hindrance" in specific, narrow circumstances. 450 F.3d 121, 127-28. In *Amies*, real estate brokers sued a seller for their commission, which was not paid because the buyer terminated the contract. 255 N.Y. at 158-60. The brokers claimed that the "prevention doctrine" entitled them to their commission because the seller did not sue the buyer for specific performance. *Id*. at 162-63. Unsurprisingly, the court rejected the brokers' claims because the seller had no duty to commence a specific performance action so that brokers could earn their commission. *Id*. at 164-65. Here, unlike in *Amies*, it is the trustee's failure to give notice of known servicer breaches—not some other party's failure—that caused the non-performance of the condition precedent.[9] And, in any event, active hindrance is robustly alleged here[10]—through, *inter alia*, BNYM's filing of false trustee certifications, its acceptance of servicer certifications it knew to be false,

---

*Ruckversicherungs-Akteiengesellschaft*, 2007 WL 2493692, at *18 (S.D.N.Y. Aug. 21, 2007), *STS Partners Fund, LP v. Deutsche Bank Secs., Inc.*, 149 A.D.3d 667, 669 (1st Dep't 2017), and *Nacional Financiera, S.N.C. v. Bankers Trustee Co. Ltd.*, 2000 WL 36564710, at *7 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 13, 2000), are completely irrelevant, as none of these cases even involves the prevention doctrine. In *Jamil v. Solar Power Inc.*, the court *applied* the prevention doctrine on the basis that the defendant could not contend that the plaintiff employee failed to comply with a condition precedent of signing a release when the defendant failed to provide the release. 2016 WL 6820725 at *5 (S.D.N.Y. Nov. 8, 2016). The relevant provision in *Jamil* did not expressly state that the defendant must provide the release, but the court nevertheless applied the prevention doctrine. *Id.* at *4.

[9] BNYM's efforts to reread *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) as somehow supportive of its arguments are unavailing. *Spanos* stands for the proposition that a party, like BNYM, cannot "escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised." *Id*.

[10] *O'Grady v. BlueCrest Capital Management LLP*, 111 F. Supp. 3d 494, 503-04 (S.D.N.Y. 2015) is readily distinguishable because in that case the plaintiff made only a single conclusory allegation that the defendant "stymied" his execution of a valid release, in contrast to the substantial allegations that BNYM had knowledge of master servicer breaches and failed to provide notice of them.

and its allowing foreclosures to proceed in its name using forged and robo-signed documents. *See* Compl. ¶¶ 142-45, 171.[11]

Finally, BNYM cites no case to support its argument that the prevention doctrine cannot apply where there is no claim for breach of the implied covenant of good faith and fair dealing. Mot. at 22-23. *Bankers Trust* applied the prevention doctrine to an indenture that provided that "the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture." 450 F.3d at 126. Indeed, courts considering claims against RMBS trustees have simultaneously dismissed implied covenant claims and applied the prevention doctrine to trigger BNYM's prudent person duties. *See, e.g.*, *Phoenix Light v. DB*, 172 F. Supp. 3d at 715, 721; *Commerzbank v. DB*, 2017 WL 564089, at *11.[12]

### 4.   Written Notice to BNYM of an EOD Is Not Required

BNYM's final argument—that written notice is the only means by which the trustee can obtain knowledge of an EOD—is unfounded for several reasons. First, BNYM's actual knowledge of EODs always suffices to trigger its duty of prudence. The PSAs impose heightened duties when EODs are "known" to the trustee. *See* Houpt Decl., Ex. 1 § 8.01(i).

---

[11] If BNYM means to suggest, like certain other trustees, that *Commerce Bank* implicitly overruled the prevention doctrine, such an argument is plainly wrong. The First Department has applied the prevention doctrine after *Commerce Bank*. *See Gemmon LLC v. Becker*, 148 A.D.3d 579, 579-80 (1st Dep't 2017).

[12] If anything, BNYM's failure to provide notice of servicer breaches invokes both the prevention doctrine and the implied covenant of good faith and fair dealing. Courts dismissing implied covenants claims have done so because they are duplicative of contract claims; however, a New York state trial court recently upheld a claim for the breach of the covenant of good faith and fair dealing based on a trustee's failure to provide notice of servicer breaches. *See Fixed Income Shares: Series M, et al. v. Citibank, N.A.*, No. 653891/15, slip op. at *14 (N.Y. Sup. Ct. June 27, 2017) ("To the extent that the Certificateholders allege that circumstances that would give rise to an event of default were actually known to Citibank, but that Citibank failed to act, in bad faith, Plaintiffs have adequately stated a claim for breach of the implied covenant of good faith and fair dealing."). In that case, the trial court dismissed the plaintiff's breach of contract claim for "failure to give notice of an Event of Default," *id.* at *10—but PacLife's breach of contract claims are not framed as merely a failure to give notice and, in any event, PacLife pleads detailed facts concerning BNYM's knowledge of master servicer breaches and EODs. *See supra* pp. 5-6.

When defaults are actually "known" to BNYM, it is not necessary for BNYM also to be "deemed" to have knowledge by virtue of written notice. BNYM's argument conflates "true" (*i.e.*, actual) knowledge with "deemed" (*i.e.*, constructive) knowledge. *See, e.g.*, *In re MTBE Prods. Liab. Litig.*, 2015 WL 5775852, at *2 (S.D.N.Y. Oct. 1, 2015) ("Knowledge can be 'true' or 'deemed.' True knowledge is just what it seems, 'where a plaintiff is actually aware . . . .' Deemed knowledge is knowledge that the plaintiff may not have actually possessed."); *Fernandez v. UBS AG,* 222 F. Supp.3d 358, 378 (S.D.N.Y. 2016) (distinguishing "actual knowledge" and "deemed knowledge"); Black's Law Dictionary (10th ed.) p. 504 ("deem" means "[t]o treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have"). Indeed, in *BNP Paribas*, the court held that a provision providing that a trustee is not "deemed" to have "knowledge" should not be read to negate the trustee's duty to act when it has "knowledge" or "actual knowledge" of an EOD. 778 F. Supp. 2d at 397-98. Every court in this District to consider the question has found that where an RMBS trustee has actual knowledge of servicer breaches, its heightened prudent person duties are triggered—whether or not it also received written notice. *See*, *e.g.*, *Royal Park v. BNYM*, 2016 WL 899320, at *6; *Phoenix Light v. BNYM*, 2015 WL 5710645, at *4-5; *Royal Park v. DB*, 2016 WL 439020, at *8.

Second, the prevention doctrine is doubly in effect. The trustee cannot complain about not receiving notice of an EOD when its own failure to provide notice to the master servicer was the only thing that stopped a default from ripening into an EOD. *Royal Park v. DB*, 2016 WL 439020, at *5 ("Defendant cannot avoid liability by 'insist[ing] upon' written notice from the Depositor when Defendant prevented such notice from being sent.").

Third, BNYM could have negotiated for PSAs stating it will have heightened duties if and only if it received written notice of EODs. Having failed to do so, BNYM cannot rewrite its

contracts. In fact, the cases that BNYM relies on are inapposite because they involve provisions expressly stating that the trustees had no duty to act absent written notice. *Argonaut Partnership L.P. v. Bankers Trustee Co. Ltd.* involved an indenture that expressly provided the trustee had no duty to act until it received written notice of an EOD. 2001 WL 585519, at *1-2 (S.D.N.Y. May 30, 2001). In *Putnam High Yield Trust v. Bank of New York*, 7 A.D.3d 439, 439 (1st Dep't 2004), the indenture defined "actual knowledge" solely as written notice, and in *Elkind v. Chase National Bank of New York*, 259 A.D. 661, 666 (1st Dep't 1940), the indenture provided that unless the trustee received "written notice from the holders of not less than ten percent of bonds outstanding," the trustee could "conclusively assume that no default has occurred."

Fourth, it would be absurd not to charge the master servicer with EODs or the trustee with heightened duties merely because they did not send each other notices. As the First Department held in *Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings*:

> Natixis's argument fails common sense. Carried to its logical conclusion, Natixis's argument amounts to the position that even where Natixis discovered its own breach of representations and warranties or where a discovery of a breach of the originators' representations and warranties triggered Natixis's duties to cure or repurchase the defective loans, failure to do so carried no contractual repercussions unless someone other than Natixis also concomitantly discovered the breaches of representations and warranties and provided Natixis notice thereof. Thus, Natixis's reading of the repurchase protocol allows it to sit on its hands after discovery of its own breaches or breaches by the originators merely because no one else has discovered them. Of course, this would effectively nullify the discovery language of the repurchase protocol contained in section 2.03(d) of the PSA. It would turn a blind eye to the cardinal principle of contract interpretation that "[a] contract should not be interpreted to produce a result that is absurd . . . commercially unreasonable[,] or contrary to the reasonable expectations of the parties."

149 A.D.3d 127, 139 (1st Dep't 2017).

Last, *Commerce Bank* does not require a different result. Wells Fargo unsuccessfully argued that *Commerce Bank* requires dismissal of post-EOD breach of contract claims. Kane Decl., Ex. 1 at 12-15; Kane Decl., Ex. 2 at 4-5. Nothing has changed since the *Wells Fargo* decision. *Commerce Bank* considered principally whether a single letter put BNYM on notice of EODs. The letter identified "events that, with time, might ripen into Events of Default." *Commerce Bank*, 141 A.D.3d at 415. Before they could ripen, however, the allegations were mooted by the Global Countrywide Settlement. The Appellate Division unsurprisingly ruled that the warning of possible EODs that was rendered moot did not, standing alone, provide notice of EODs. As courts have ruled in considering the application of *Commerce Bank* to much more robust pleadings similar to PacLife's Complaint, *Commerce Bank* is readily distinguishable. *See*, *e.g.*, *Wells Fargo*, 2017 WL 1194683, at \*9-10; *Commerzbank v. BNYM*, 2017 WL 1157278, at \*5; *Blackrock Balanced Portfolio (FI), et al. v. Deutsche Bank Nat'l Tr. Co., et al.*, 14-cv-9367 (S.D.N.Y. Feb. 2, 2017) at 3:2-4:11 (Kane Decl., Ex. 5).

## II.   BNYM CONCEDES THE COMPLAINT ADEQUATELY ALLEGES A NEGLIGENCE CLAIM

BNYM does not seek dismissal of PacLife's negligence claims. Mot. at 27. The Complaint states claims for negligence based upon BNYM's failure to perform ministerial acts with due care and to avoid conflicts of interest (*see* Compl. ¶¶ 11, 73, 74, 152, 189-96, 218-20), and those claims should be sustained for the same reasons articulated in *Wells Fargo*, 2017 WL 1194683, at \*13-14.

## III.   PACLIFE'S REMAINING CLAIMS

The Complaint adequately states a claim for post-EOD breach of fiduciary duties. As noted in *Wells Fargo*, "an EOD is transformative: After an EOD, 'an indenture trustee's fiduciary duties expand under the New York common law such that "fidelity to the terms of an

indenture does not immunize an indenture trustee against claims that the trustee has acted in a manner inconsistent with his or her fiduciary duty of undivided loyalty to trust beneficiaries.""" 2017 WL 1194683, at *12 (quoting *Phoenix Light v. DB*, 172 F. Supp. 3d at 717-18 (quoting *BNP Paribas*, 778 F. Supp. 2d at 401)). As set forth above, the Complaint sufficiently alleges EODs. *See supra* pp. 6, 9-10. In *Wells Fargo*, this Court upheld post-EOD breach of fiduciary duty claims "for which Plaintiffs are owed damages that do not lie simply in the enforcement of Defendant's contractual obligations." *Id.* at *16. The Complaint here likewise alleges breaches beyond breaches of contractual obligations, including BNYM's breach of its duty of loyalty by acting as a conflicted trustee and acting to protect its own interests and those of others as opposed to the interests of its beneficiary—PacLife. Compl. ¶¶ 214-17.[13]

## IV.   PACLIFE'S CLAIMS ARE TIMELY

As this Court observed in *Wells Fargo*, "courts in this Circuit are skeptical of '[l]imitations-based arguments in RMBS fraud actions . . . at the motion to dismiss phase,' given the difficulty that inheres in such cases for plaintiffs 'in obtaining sufficient notice of the facts underlying their claims.'" 2017 WL 1194683, at *32 (quoting *Commerzbank v. DB*, 2017 WL 564089, at *8 (quotation marks omitted) (quoting *HSN Nordbank AG* v. *RBS Holdings USA Inc.*, 2015 WL 1307189, at *6 (S.D.N.Y. Mar. 23, 2015) (collecting cases))). BNYM's scattershot statute of limitations argument is based on three premises, each of which fails. First, claims based on conduct before February 2011 are not time barred because of tolling. Second, PacLife's

---

[13] PacLife acknowledges that this Court previously dismissed claims for breach of the implied covenant of good faith and fair dealing as well as Streit Act and TIA claims in *Wells Fargo*. So as not to burden the Court with duplicative briefing on issues already decided, PacLife respectfully incorporates herein the arguments previously asserted with respect to those claims. Kane Decl., Ex. 3 at 18-24.

claims did not all accrue by February 2009. Third, the Article 77 Proceeding is not *res judicata* as to all conduct after October 2010.

### A.       Claims Based on Conduct Before February 2011 Are Not Time Barred

The Motion ignores that PacLife's claims are subject to *American Pipe* tolling. Under *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). It sets forth "a tolling rule that tolls the time for absent class members to bring a claim while a class action is pending of which they are members." *Vincent v. Money Store*, 915 F. Supp. 2d 553, 560 (S.D.N.Y. 2013). The statute of limitations is tolled from the start of the putative class action until the court denies class certification. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). This tolling benefits not only putative class members but "also [] would-be class members who later file their own independent actions." *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 105 (2d Cir. 2013) (citations omitted).

Here, PacLife's claims relating to 10 of the 13 Trusts (the "Tolled Trusts") were tolled beginning on August 5, 2011—the commencement of the class action *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, 11-cv-5459 (S.D.N.Y.) (the "Policemen's Class Action").[14] The Policemen's Class Action defined the class as "all current and former investors who acquired Countrywide MBS for the Covered Trusts" and "suffered losses as a result of Defendant's misconduct alleged herein." Kane Decl., Ex. 7 ¶ 65. PacLife was part of the class for the Tolled Trusts.

---

[14] The 10 Tolled Trusts are CWHL 2005-13, CWHL 2005-17, CWHL 2005-22, CWHL 2006-21, CWALT 2006-32CB, CWALT 2006-45T1, CWALT 2006-OA3, CWALT 2007-5CB, CWALT 2007-17CB, and CWALT 2007-24.

While claims relating to certain trusts, including nine of the Tolled Trusts, were dismissed from the Policemen's Class Action on December 12, 2014 for lack of standing, *Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014), claims relating to those Trusts still received the benefit of *American Pipe* tolling from August 5, 2011 to December 12, 2014, making all claims that accrued on or after October 5, 2007 timely. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 160 (S.D.N.Y. 2012) ("If *American Pipe* tolling did not apply where a named plaintiff lacked standing, [p]utative class members . . . would be unable to rely on their purported representatives. They instead would be forced to make protective filings to preserve their claims in the event that those representatives were determined not to have standing.") (quotation and citation omitted); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372 (S.D.N.Y. 2011) (*American Pipe* tolling applies even when the class plaintiff lacks standing). Claims relating to CWALT 2006-OA3, the Tolled Trust that remained in the Policemen's Class Action subsequent to the Court's December 12, 2014 standing decision, were tolled until the action was voluntarily dismissed on August 26, 2016, making all claims that accrued on or after February 5, 2006 timely. Kane Decl., Ex. 9. Appendix A hereto sets forth the effect of class action tolling on each of the Tolled Trusts.[15]

Paclife's claims with respect to all Trusts are also equitably tolled. "Deeply rooted" in American jurisprudence, the principle that "no man may take advantage of his own wrong" has long been applied "to bar inequitable reliance on statutes of limitations." *Glus v. Brooklyn E.*

---

[15] "New York courts have . . . long embraced the principles of *American Pipe*" tolling for state law claims. *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) (internal quotation and citation omitted), *overruled on other grounds Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013). *See also Commerzbank v. DB*, 2017 WL 564089, at *4 (holding the plaintiff's *American Pipe* tolling argument overcame the defendant's statute of limitations defense with respect to state law claims); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *146 (S.D.N.Y. Oct. 20, 2015) ("New York would apply cross-jurisdictional class-action tolling as to both residents and non-residents.").

*Dist. Terminal,* 359 U.S. 231, 232-33 (1959) (citations omitted). Indeed, "courts have long had

the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of

Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long

delay between the accrual of the cause of action and the institution of the legal proceeding."

*Gen. Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966) (citations omitted); *see also Simcuski*

v. *Saeli*, 44 N.Y.2d 442, 454 (1978); *Kamruddin v. Desmond*, 293 A.D.2d 714, 715 (2d Dep't

2002) (citations omitted). Equitable tolling applies when: (i) the defendant through "fraud,

misrepresentations or deception" prevented the plaintiff from timely bringing suit; (ii) the

plaintiff reasonably relied on the defendants' misrepresentations; and (iii) "the misrepresentation

or act of concealment underlying the estoppel claim is [not] the same act which forms the basis

of plaintiff's underlying substantive cause of action." *Zumpano v. Quinn,* 6 N.Y.3d 666, 674

(2006) (quoting *Simcuski,* 44 N.Y.2d at 449); *Kaufman v. Cohen,* 307 A.D.2d 113, 122 (1st

Dep't 2003) (citations omitted). "Where concealment without actual misrepresentation is

claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must

demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or

her of facts underlying the claim." *Gleason v. Spota*, 194 A.D.2d 764, 765 (2d Dep't 1993).

 Here, BNYM had the duty to give certificateholders notices of EODs and to disclose

servicing violations in its Regulation AB reports. Compl. ¶¶ 62, 64. As alleged in the Complaint,

BNYM had detailed actual knowledge of both servicing breaches and EODs. *Id*. ¶¶ 98-126.

Nonetheless, BNYM never disclosed to PacLife any EODs in the Trusts, and failed to disclose

servicing violations in its Regulation AB reports. Kane Decl., Ex. 8 (BNYM Regulation AB

reports either disclosing no servicing violations or materially understating them). Further,

PacLife reasonably relied on "BNY Mellon's cloaking of mortgage origination and servicing

abuses infecting Countrywide RMBS". Compl. ¶ 202.[16]

### B.     PacLife's Claims Did Not All Accrue By February 2009

As set forth above, claims accruing in February 2009 would be timely for the Tolled

Trusts. Nevertheless, BNYM's position that all underwriting claims accrued by February 2009 is

baseless. As an initial matter, BNYM does not argue that claims based on servicing violations

and EODs accrued by February 2009—or any particular date, for that matter—and therefore it

waives timeliness arguments as to those claims. Indeed, servicing claims and claims for failing to

exercise prudence after EODs, which remain uncured, have occurred repeatedly to the present.

Compl. ¶¶ 141, 156. Further, BNYM ignores the distinction between claims for failure to cause

repurchase of defective loans and claims for failure to provide notice of such defects, and makes

no argument concerning the timeliness of claims for failure to give notice, which accrue

repeatedly whenever BNYM discovers a breach (irrespective of the timeliness of repurchase

claims). *See Bank of N.Y. Mellon v. WMC Mortg., LLC*, 2017 WL 1946017, at *4 (1st Dep't May

11, 2017); *Morgan Stanley Mortg. Loan Tr. 13-ARX v. Morgan Stanley Mortg. Capital Holdings

LLC*, 143 A.D.3d 1, 4 (1st Dep't 2016). BNYM's argument with respect to the underwriting

claims is that because the currently publicly available notices of breaches of representation and

warranties cited in the Complaint are all dated before February 2009 except for one letter from

November 2010, then the breach of representation and warranty claims must all have accrued by

February 2009. Mot. at 15. This is nonsense. There has been no discovery. PacLife simply cited

the relevant notices to BNYM that were publicly available from a filing in another action. As this

Court held in *Wells Fargo*: "At this stage, Plaintiffs are not required to specify precisely when,

---

[16] BNYM's reliance upon a statement at the pre-motion conference regarding claims that accrued more than six years prior to the filing of the Complaint (Mot. at 10) overlooks the effect of tolling.

and precisely on what basis, Defendant breached each of its contractual obligations." 2017 WL 1194683, at *11.[17]

    While BNYM likely committed breaches by February 2009, for years thereafter, BNYM continued to commit breaches of its duties to give notice of, and to enforce the repurchase of, loans breaching representations and warranties. BNYM's breaches continued through January 31, 2014, when the Global Countrywide Settlement became effective and BNYM relinquished repurchase claims against Bank of America for Countrywide RMBS. At all times before January 31, 2014, BNYM could have exercised its rights to cause BNYM to repurchase breaching loans, and it repeatedly breached that duty (with the precise dates to be identified during discovery).[18]

    BNYM's assertion that it could not have pursued repurchase claims after June 28, 2011 because it entered into the Global Countrywide Settlement (Mot. at 14) is based on material outside of the Complaint and, in any event, mischaracterizes the settlement.[19] The Global

---

[17] In attempt to bolster its argument that underwriting-based claims accrued in February 2009, BNYM misapprehends this Court's footnote in *Wells Fargo*. Mot. at 16. This Court noted that even though the complaint alleged that by January 2009 the defendant had discovered high percentages of breaching loans, "discovery of these high breach percentages is not precisely the same as discovery of the relevant breaches themselves." *Wells Fargo*, 2017 WL 1194683, at *33 n.24.

[18] BNYM's reliance upon *First American Title Insurance Co. v. Fiserv Fulfillment Services Inc.*, 2008 WL 3833831 (S.D.N.Y. Aug. 14, 2008) and *Campbell v. Culver*, 56 A.D. 591 (4th Dep't 1900) is misplaced, because PacLife does not rely upon the continuous breach doctrine for the timeliness of its claims. In *First American*, the court declined to apply the continuous breach doctrine and held that the plaintiff's cause of action accrued upon the defendant's failure to record the mortgages. 2008 WL 3833831, at *3. In *Campbell*, the relevant breach was the failure to pay taxes on the day they became due. 56 A.D. at 594. The court concluded that to the extent additional damages arose from the failure to pay taxes, "they were not the result of a new or continuous breach of contract, but related back to the original breach which gave the right of action for their recovery . . . ." *Id*. Here, by contrast, distinct breaches occurred each time BNYM discovered, and failed to provide notice of and seek repurchase of, loans breaching representations and warranties or documentation requirements.

[19] Additionally, PacLife filed its complaint within six years of June 28, 2011. And, if PacLife had brought claims at the time of this settlement, BNYM would have argued that the claims were not yet ripe. *See Walnut Place LLC v. Countrywide Home Loans, Inc.*, 35 Misc. 3d 1207(A), 2012 WL 1138863 (N.Y. Sup. Ct. Mar. 28, 2012), *aff'd*, 96 A.D.3d 684 (1st Dep't 2012). As BNYM's own cases posit, a claim does not accrue until a defendant has liability. Mot. at 9. BNYM became liable at many points in time, including when it relinquished repurchase claims with finality.

Settlement Agreement, improperly submitted on a motion to dismiss, expressly stated that it was "subject to judicial approval," which required BNYM to commence the Article 77 Proceeding in New York state court. Houpt Decl., Ex. 5 at 2. The settlement agreement further stated that if it became legally impossible to obtain final court approval of the settlement, the settlement agreement would be null and void. Houpt Decl., Ex. 5 at 6. Thus, BNYM's repurchase claims against Bank of America/Countrywide were not relinquished until January 31, 2014. Prior to that date, BNYM was obligated to, and should have, pursued repurchase claims.

### C. The Article 77 Proceeding Is Not *Res Judicata* as to BNYM's Conduct After October 2010

As an initial matter, BNYM's *res judicata* argument heavily relies on material outside of the Complaint and should not even be considered at this stage. *See supra* n.3.[20] If the Court does consider the material outside the Complaint, neither the Global Countrywide Settlement nor the decision in the Article 77 Proceeding forecloses PacLife's claims, as BNYM's *res judicata* arguments are wholly unfounded.[21] Under New York law, *res judicata* operates to bar a claim only where a judgment has been rendered between (1) the same parties on the (2) same cause of action. *See, e.g.*, *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008). Notably, this bar does not apply where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (quoting *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir. 1986)) (citing *McLearn v. Cowen & Co.,* 48 N.Y.2d 696, 697 (1979)). PacLife's claims are not barred by *res judicata* because (i) the claims at issue in this action were neither considered nor resolved by the Article

---

[20] Solely in case the Court considers BNYM's submission of material outside of the Complaint, PacLife submits additional documents from the Article 77 Proceeding to correct BNYM's misleading record.

[21] The CWALT 2008-1R trust was not part of the Global Countrywide Settlement. Therefore, under any circumstances, *res judicata* cannot apply to claims concerning CWALT 2008-1R.

77 Proceeding in which PacLife was not even a party, and (ii) the Article 77 Proceeding forum was without power to hear PacLife's claims.

### 1. PacLife's Claims Were Not Decided in the Article 77 Proceeding

BNYM's assertion that the claims at issue are "precisely the claims covered by the [Countrywide] settlement" (Mot. at 11) is simply not true. PacLife was not even a party to the Article 77 Proceeding. Moreover, no party brought claims against BNYM in the Article 77 Proceeding. The Article 77 court made very clear its sole, limited responsibility: to determine whether BNYM "*abused its discretion*" when entering into the Global Countrywide Settlement. *See In re BNYM*, 42 Misc.3d 1237(A) at *10 (emphasis added). PacLife's claims challenge neither the Global Countrywide Settlement nor whether BNYM abused its discretion when entering into the settlement. Rather, PacLife asserts various breaches by BNYM under the PSAs and common and statutory law. The primary standards governing PacLife's claims are whether BNYM complied with its contractual duties pre-EOD and whether BNYM exercised its powers prudently after an EOD. The Article 77 Proceeding's determination applying an "abuse of discretion" standard is irrelevant to PacLife's claims. In fact, the Article 77 court presumed no EOD occurred for purposes of its decision, *In re BNYM*, 42 Misc.3d 1237(A) at *11—the exact opposite of PacLife's allegations in the Complaint.

BNYM's *res judicata* argument also completely contradicts the express assurances that BNYM itself made to the court during the pendency of the Article 77 Proceeding. When seeking approval of the settlement, BNYM's counsel represented that the settlement's approval would not foreclose future claims against BNYM as trustee:

> I'm saying in open court today, as an officer of the court, there are **no claims** that are being released against the trustee. These claims can proceed in other actions. ***We're not going to refer to, or cite, the settlement agreement as a reason why they can't proceed in separate litigations against the trustee.***

26

Kane Decl., Ex. 5 at 1274a-1275a (emphasis added). And, as set forth above, *see supra* p. 8, when BNYM sought a release barring claims against it as trustee, the Article 77 court expressly rejected BNYM's request. *In re BNYM*, 42 Misc.3d 1237(A) at *4-5, 20. BNYM's request that this Court give *res judicata* effect to decision in which the deciding court expressly rejected findings that would have barred investor claims against BNYM is plainly without merit.[22]

### 2.   PacLife's Claims Could Not Have Been Decided in the Article 77 Proceeding

New York law holds that *res judicata* cannot be applied where, as here, "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *See Davidson*, 792 F.2d at 278.[23] BNYM's contention that PacLife's claims could have been raised and decided as mere objections to the settlement is just wrong.

First, as a court in equity, the Article 77 Proceeding had no jury, and the court refused to empanel one. *See* Kane Decl., Ex. 13 at 54 ("I find this type of a proceeding is essentially equitable in nature and, therefore, that you are not entitled to a jury trial."); Kane Decl., Ex. 14 at 4 (BNYM arguing that an Article 77 Proceeding is a "traditional, well recognized, equitable

---

[22] BNYM's reliance on *Commerce Bank v. BNYM* for the proposition that claims against BNYM should have been raised in the Article 77 Proceeding is unfounded. Mot. at 13. In *Commerce Bank*, the Appellate Division barred only a single claim based upon the prior approval of the settlement. 141 A.D.3d at 416. That claim was that BNYM breached its duty to "fully analyz[e] and evaluat[e] the Loan Modification Claims in negotiating the greatest value possible for such claims in any attempted settlement with Bank of America." Houpt Decl., Ex. 7 ¶ 188(g). PacLife's Complaint does not assert such a claim. *In re BNYM* (Houpt Decl., Ex. 8) is not on point because in that case the court merely held that TIG belatedly raised an objection to the Global Countrywide Settlement that it could have raised in the Article 77 Proceeding.

[23] The Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982), similarly provides: "The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first."

proceeding."). In doing so, the Article 77 court expressly noted that a jury would be required for breach of contract claims (such as PacLife's) against BNYM. Kane Decl., Ex. 13 at 63 ("[I]f this was a breach of contract case or a case on negligence or other things that are entitled to jury trials, you would get a jury trial. You would have a right to make a jury trial.").

Second, in the Article 77 Proceeding, no mechanism existed for PacLife to assert legal claims against BNYM. "Cross claims or counterclaims are not authorized in the special proceeding under article 79 of the Civil Practice Act [the predecessor of Article 77]." *In re Reilly*, 201 N.Y.S.2d 690, 690 (N.Y. Sup. Ct. 1959); *see also Gregory v. Wilkes*, 205 N.Y.S.2d 405, 405 (N.Y. Sup. Ct. 1960) ("[Article 79] was never intended to take the place of, adversary plenary litigation . . . .").

Third, the damages sought by PacLife could not have been obtained from BNYM given that the Article 77 court refused to convert the proceeding into a plenary action. *See* Kane Decl., Ex. 15 at 456a ("All that Judge Kapnick was asked to do was approve or not approve this, or to find . . . whether or not this was an abuse of discretion."). Second Circuit precedent is clear that when damages asserted by a plaintiff were not available in a prior proceeding, as here, *res judicata* does not apply. *See Davidson*, 792 F.2d at 278.[24]

## V.    PACLIFE HAS STANDING FOR CLAIMS ON THE SOLD CERTIFICATES

BNYM's standing argument incorrectly presumes that New York law governs PacLife's sale of the six sold Certificates. Though each PSA contains a provision that its governing law is New York, the "governing law clause in the indenture . . . *has no relevance to the question*

---

[24] BNYM cites *Mullane v. Central Hanover Bank & Trust Co.* for the proposition that a court "*may* cut off [beneficiaries'] rights to have the trustee answer for negligent or illegal impairments of their interests." 339 U.S. 306, 313 (1950) (emphasis added). That a court "*may*" cut off a person's rights is an unremarkable proposition. Indeed, though BNYM requested that the Article 77 court cut off investors' rights to bring claims against BNYM, the court expressly declined to do so. *See supra* pp. 26-27.

*whether the contracts of sale [of notes] . . . operated to assign certain rights of action*." *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 330 (S.D.N.Y. 2003) (emphasis added) (internal quotation and citation omitted).

Determining the law that governs PacLife's sales requires a fact-intensive choice-of-law inquiry, which entails an analysis of (i) the place of contract; (ii) the place(s) of negotiation and performance; (iii) the location of the subject matter; and (iv) the domicile or place of business of the contracting parties. *Royal Park v. DB*, 2017 WL 1331288, at *7, 7 n.8 (S.D.N.Y. Mar. 21, 2017); *see also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994) (applying the "center of gravity" or "grouping of contracts" approach to a choice-of-law question in a contracts case). BNYM does not contend that *any* of these activities occurred in New York. To the contrary, California is the location of the subject matter, the seller, and the sales activity. Compl. ¶¶ 16-17. Therefore, California law governs the sales.[25]

Under California law, a transfer of securities, like the Certificates, does not automatically transfer legal claims. Rather, "the assignment, to be effectual, must be a manifestation to another person by the owner of the right indicating his intention to transfer . . . ." *Cockerell v. Title Ins. & Tr. Co.*, 42 Cal. 2d 284, 291 (1954); *see also* 1 Witkin, Summary 10th Contracts § 709 (2005) (same); *Sunburst Bank v. Exec. Life Ins. Co.*, 24 Cal.App.4th 1156, 1164 (2d Cal. Dis. Ct. App. 1994). The evidence of assignment of a legal claim must be "clear and positive to protect an obligor from any further claims by the primary oblige." *Great Am. Ins. Co. v. Sequoia Ins. Co.*, 2016 WL 844819, at *10 (C.D. Cal. Mar. 1, 2016); *see also Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 4038449, at *3-4 (E.D. Cal. Sept. 10, 2012). For this reason,

---

[25] If the Court does not rule that California law governs the sales, at a minimum, which state's law applies to the sales would present an issue of fact that cannot be resolved at the motion to dismiss stage.

sellers routinely bring claims for pre-assignment breaches under California law. *See*, *e.g.*, *Vaughn v. Dame Instruction Co.*, 223 Cal.App.3d 144, 149 (4th Cal. Dis. Ct. App. 1990) (permitting plaintiff to maintain action for property damage after plaintiff had sold property). BNYM does not (and cannot) contend that PacLife manifested any intent to transfer its claims. Therefore, PacLife has standing to pursue claims against BNYM with respect to the six sold Certificates.[26]

## CONCLUSION

For the foregoing reasons, BNYM's Motion should be denied in its entirety.

Dated: July 10, 2017

Respectfully submitted,

/s/ *David H. Wollmuth*
David H. Wollmuth
Ryan A. Kane
Samantha C. Glazer
Marissa A. Dioguardi
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
Fax: (212) 382-0050
dwollmuth@wmd-law.com
rkane@wmd-law.com
sglazer@wmd-law.com
mdioguardi@wmd-law.com

*Attorneys for Plaintiffs*

---

[26] While, in a sale governed by New York law, a bondholder's claims automatically run with the transfer of the bonds pursuant to N.Y. General Obligations Law § 13-107, courts in this District have recognized that New York law is unique. *See Racepoint Partners, LLC v. JPMorgan Chase Bank*, 2006 WL 3044416, at *4 (S.D.N.Y. Oct. 26, 2006) ("To the knowledge of the parties, New York is the only state to have enacted such a provision [§13-107] for the automatic assignment of bondholders' claims."); *see also Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 97 N.Y.2d 456, 461, 461 n.1 (2002).

**Appendix A: *American Pipe* Tolling[1]**

|  | Is Trust part of Policemen's Class Action? | Was Trust dismissed from Policemen's Class Action? | *American Pipe* Tolling Period | Amount of Statute of Limitations Lapsed post-*American Pipe* Tolling | Claims Accruing after Below Date Are Timely |
|---|---|---|---|---|---|
| **CWHL 2005-13** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWHL 2005-17** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWHL 2005-22** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWHL 2006-21** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWALT 2006-32CB** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWALT 2006-45T1** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |

[1] This Appendix reflects the effect of *American Pipe* tolling on the Tolled Trusts. With respect to the other three Trusts (CWHL 2005-5, CWALT 2007-18C, and CWALT 2008-1R), claims relating to those Trusts are timely without *American Pipe* tolling for the reasons stated within the Memorandum of Law in Opposition to The Bank of New York Mellon's Motion to Dismiss.

| | Is Trust part of Policemen's Class Action? | Was Trust dismissed from Policemen's Class Action? | *American Pipe* Tolling Period | Amount of Statute of Limitations Lapsed post-*American Pipe* Tolling | Claims Accruing after Below Date Are Timely |
|---|---|---|---|---|---|
| **CWALT 2006-OA3** | Yes – claims tolled beginning on August 5, 2011 | No – *American Pipe* tolling ended on August 26, 2016 | 60.75 months | 6 months | February 5, 2006 |
| **CWALT 2007-5CB** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWALT 2007-17CB** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |
| **CWALT 2007-24** | Yes – claims tolled beginning on August 5, 2011 | Yes – *American Pipe* tolling ended on December 12, 2014 | 40.25 months | 26.25 months | October 5, 2007 |